IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA LUISA SALINAS DE VALLE, et al., individually, and acting in the interest of other current and former employees,<br><br>    Plaintiffs,<br><br>    v.<br><br>SIERRA CASCADE NURSERY, INC., a California corporation, and Does ONE through TWENTY, inclusive,<br><br>    Defendants. | 2:06-cv-2274-GEB-DAD<br><br><br><br><br>ORDER |

      On October 16, 2006, Plaintiffs commenced this action in the Superior Court of Siskiyou County and moved *ex parte* for a temporary restraining order ("TRO").  The hearing was scheduled for October 16, 2006.  Defendant filed a notice of removal on October 16, 2006, effectively removing this action to federal court.  Plaintiffs then moved for a TRO.  The Court directed Defendant to respond to Plaintiffs' motion by 2:00 p.m. on October 18, 2006, and scheduled a hearing on the TRO on October 19, 2006, at 2:30 p.m.

1

1        Plaintiffs are Mexican migrant workers who were recruited by Defendant, an operator of strawberry nurseries, to work as strawberry trimmers in Tulelake, California.  The workers received work authorization through the issuance of H-2A non-immigrant visas, and were transported by Defendant from Mexico to California by bus.  The workers entered into an H-2A Employment Agreement ("H-2A Agreement") with Defendant, the terms of which include the requirements that Defendant provide the workers housing and three meals a day.  All workers are scheduled to end their employment with Defendant under the H-2A visa program on October 27, 2006.

        The parties dispute the evidence that can be used when ruling on a TRO.  In particular, Defendant objects to a number of declarations submitted by Plaintiffs in support of their motion.  (See Def.'s Objections and Mot. to Strike, Oct. 18, 2006.)  The trial court has considerable discretion in weighing evidence submitted in an injunction proceeding.  "The urgency of obtaining [an] injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm."  Flynt Distributing Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) (internal citation omitted).  Accordingly, the Court will decide what weight is given to the evidence.

        The issuance of a TRO is appropriate only where the movants demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury [footnote omitted] or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in [their] favor."  GoTo.com,

Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) (internal quotation and citation omitted).  "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985) (internal citation omitted). Plaintiffs have failed to show a significant threat of irreparable injury on the majority of their complaints.  (See Pls.' Mot Ex. A at 4-10.)  However, Plaintiffs have shown a significant threat of irreparable injury with regards to three matters: bed spacing, heating of fairgrounds bathrooms and the need to ensure that nutritious meals are provided.

The first issue addressed is bed spacing.  Under 29 C.F.R. § 1910.142(b)(2) and (3), Defendants must ensure that "each room for sleeping purposes shall contain at least 50 square feet of floor space for each occupant" and that "such beds or similar facilities shall be spaced not closer than 36 inches both laterally and end to end . . . ."  See also 25 CA ADC §§ 724, 732.  Plaintiffs' declarations and photographs show that their living area is currently not in compliance with these spacing requirements.  (See e.g., Lopez Decl. ¶ 8, Oct. 11, 2006; Barreras Decl. ¶ 6, Oct. 15, 2006; Ocana Decl. ¶ 6, Oct. 15, 2006.)  Defendant counters that the spacing requirements were met when the workers were initially placed in the dormitories, but certain workers changed the spacing of the beds so they could more easily play cards.  Defendant expresses concern that to change the spacing now would force Defendant to enter the workers' living area and could potentially violate their privacy rights. Plaintiffs rejoin that Defendant is obligated to ensure the workers are aware of the spacing requirements and Defendant should be enjoined

to tell the workers about those requirements and to take immediate action to become in compliance with them.  The Defendant shall make the necessary adjustments so that its sleeping quarters at the subject dormitories are in accordance with the stated spacing requirements and shall tell the workers about those requirements no later than 8:00 p.m. on October 20, 2006.

Plaintiffs also complain about heating of the fairgrounds bathroom facilities.  Defendant conceded during the hearing that the fairgrounds concrete bathrooms are unheated.  Heating must be provided in these bathrooms.  See 29 C.F.R. § 1910.142(b)(11) ("If a camp is used during cold weather, adequate heating equipment shall be provided."); 25 CA ADC § 800 ("In temporary and seasonal labor camps heating equipment is not required, except in shower rooms . . . .").  Therefore, Defendant shall ensure that adequate heating is provided in the fairgrounds concrete bathrooms no later than 8:00 p.m. on October 21, 2006.

Finally, the parties dispute whether Plaintiffs are being provided nutritious meals.  Under the H-2A Agreement, Defendant is obligated to provide the workers three meals per day that are "an adequate, well-balanced serving of a variety of wholesome, nutritious foods."  8 CA ADC § 11140(10)(A); see also 20 C.F.R. § 655.102(b)(4).  The record is unclear as to whether Defendant is providing the workers with nutritious meals.  Defendant argued it currently serves its workers three meals a day, but only indicates the meals are nutritious.  (Def.'s Opp'n at 4.)  Plaintiffs assert the meals are not nutritious.  (Pls.' Mot Ex. A at 8; see, e.g., Valle Daniel Decl. ¶ 13, Oct. 15, 2006; Valles Gonzalez Decl. ¶ 12, Oct. 15, 2006.)  Defendant indicated during oral argument that if a TRO issues

requiring the meals to be nutritious, litigation would be continuous over the meaning of the word "nutritious." Plaintiffs rejoined that the school lunch standards could be used. Since Defendant did not provide sufficient assurance that the meals will be nutritious, the standard Plaintiffs propose is adopted. Accordingly, Defendant shall ensure it is providing its workers with three nutritious meals per day under this standard no later than breakfast on October 21, 2006.

The remaining issue concerns the parties' factual dispute over whether Plaintiffs were properly informed about the Company's production standard at the time of recruitment. (See Pls.' Mot Ex. A at 5-6; Def.'s Opp'n at 6.) However, this factual dispute need not be resolved because federal law provides that when the minimum productivity standards are not "specified in the job offer . . . such standards shall be no more than those normally required . . . by other employers for the activity in the area of intended employment." 20 C.F.R. § 655.102(b)(9)(ii)(B)(1) and (2).

Defendant has introduced evidence showing its production quota is similar to the production standards that are "normally required" in the area where the workers are employed. (See Fortin Decl. ¶ 3, Oct. 18, 2006; Albaugh Decl. ¶ 2, Oct. 17, 2006.) Furthermore, Defendant has also shown it has only terminated workers for not meeting a production quota that is below these standards. (See Def. Opp'n at 6; Fortin Decl. ¶ 3.) Therefore, Defendant has a likelihood of success on the merits of its position that its production quota is not unlawful.

Plaintiffs argue that Defendant is firing employees for failure to meet this production quota, and that this firing causes those employees to suffer irreparable harm. Plaintiffs point to five

fired Plaintiffs and to the looming threat that other Plaintiffs could be fired.  While it is understood that termination could result in economic injury, this does not constitute irreparable harm under the circumstances.  Therefore, Plaintiffs' request for a TRO on this issue is denied.

IT IS SO ORDERED.

Dated:  October 20, 2006

_____
GARLAND E. BURRELL, JR.
United States District Judge